UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
(Central Division)

| | |
|---|---|
| In re: ) | |
| ) | |
| CARMEN N. RODRIGUEZ, ) | Chapter 13 |
| ) | Case No. 23-40040-EDK |
| Debtor. ) | |
| ) | |
| ) | |
| CARMEN N. RODGRIGUEZ, ) | |
| ) | Adversary Proceeding |
| Plaintiff, ) | No.: 23-04006-EDK |
| ) | |
| v. ) | |
| ) | |
| TALLAGE DAVIS, LLC, ) | |
| ) | |
| Defendant. ) | |
| ) | |

## FIRST AMENDED VERIFIED COMPLAINT

Plaintiff Carmen N. Rodriguez ("Ms. Rodriguez"), by way of complaint against

Defendant Tallage Davis LLC ("Tallage"), alleges as follows:

## INTRODUCTION

1.     This is an action to avoid the transfer of Ms. Rodriguez's home, located at 24

Tatman Street, Worcester, Worcester County, Massachusetts 01607 (the "Home").  Ms.

Rodriguez seeks to recover the Home for her benefit and her estate's benefit.

2.     Ms. Rodriguez seeks to avoid the transfer of her Home (the "Transfer") as a

fraudulent conveyance.  In 2021, Tallage took ownership of Ms. Rodriguez's Home through

a tax sale and foreclosure.

3.     On December 16, 2019, Tallage filed a Complaint to foreclose on Ms.

Rodriguez's Home and stated in that complaint that the assessed value of the Home was $189,000.  *See* Exhibit A.

4.      The only consideration Ms. Rodriguez received was the forgiveness of a $2,656.61 tax debt.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over the subject matter of this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334.

6.      This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  This Court has the authority to hear, determine, and enter all appropriate orders and judgments on the claims set forth herein pursuant to 28 U.S.C. § 157(b)(l). The statutory predicates for the relief requested are, *inter alia,* Bankruptcy Code §§ 522(g), 522(h), 544(b), 547, 548(a), and 550(a) as well as Mass. G.L. ch. 109A, §§ 5(a)(2), 6(a), & 9(b).

7.      Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

8.      Ms. Rodriguez consents to the bankruptcy court's entry of final orders or judgments.

## PARTIES

9.       Plaintiff Carmen N. Rodriguez is the debtor-in-possession in Case No. 23-40040-EDK pending in this Court.

10.     Ms. Rodriguez filed her voluntary petition under Chapter 13 of Title 11 of the United States Code (the "Bankruptcy Code") on January 18, 2023 (the "Petition Date").

11.     Prior to the pre-petition tax sale and foreclosure of her right of redemption, Ms. Rodriguez owner her Home in fee simple.

12.     Defendant Tallage Davis, LLC is a Massachusetts limited liability company

located with an address of 165 Tremont Street. Suite 305, Boston, Suffolk County,
Massachusetts 02111.

13.    Upon information and belief, Tallage conducts business in Worcester
County, Massachusetts.

14.    Tallage is in the business of acquiring tax titles and collector's deeds from
municipalities in Massachusetts and foreclosing on homeowners' rights of redemption.

## BACKGROUND

15.    From 1996 until 2021, Ms. Rodriguez, a single mother of two adult sons, was
the owner of her own Home.

16.    Ms. Rodriguez lives in the Home. She has lived there continuously since 1996.

17.    Ms. Rodriguez built up her life savings in the Home.  She made all payments on
her home loan.  Her mortgage was discharged in August 2020.  *See* Exhibit B, discharge
recorded at the Worcester County Registry of Deeds, Book 63129, Page 282.

18.    Ms. Rodriguez worked for 37 years at a TJ Maxx warehouse near her Home in
Worcester, Massachusetts.

19.    In 2019, Ms. Rodriguez developed health issues which forced her to retire.

20.    Ms. Rodriguez subsequently fell behind on her real estate tax payments to the
City of Worcester ("City" or "Worcester").

21.    She did not make payments totaling $2,656.61 for property taxes and other city
services (the "Tax Obligations").

22.    The $2,656.61 of Tax Obligations did not represent – and were far less than –
the value of the Home.

23.     Upon information and belief, in 2019 Worcester initiated the tax sale process with respect to Ms. Rodriguez's Home, pursuant to Mass. Gen. L. ch. 60, §§ 43 and 45.

24.     Upon information and belief, Worcester issued to Tallage a Tax Collector's Deed dated June 28, 2019.

25.     The Tax Collector's Deed is recorded at the Worcester (South) Registry of Deeds (the "Registry") at Book 60685, Page 57 (the "City's Tax Collector's Deed").  A true copy of the City's Tax Collector Deed is attached as Exhibit C.

26.     As consideration, Tallage paid the City a total of $3,370.60 (the "Purchase Amount").  The Purchase Amount represented the $2,656.61 in tax liens on the Home and a premium of $713.99.

27.     The Purchase Amount did not represent – and was far less than – the value of the Home.

28.     On or about December 16, 2019, Tallage commenced a civil action in the Massachusetts Land Court pursuant to applicable state law to foreclose Ms. Rodriguez's right of redemption of the Home (the "Foreclosure Action").  *See* Exhibit A.

29.     On or about December 27, 2019, Tallage recorded in the Registry a notice stating that it had filed a complaint in Land Court to foreclose a tax lien on Ms. Rodriguez's Home.  *See* Exhibit D.

30.     On about August 10, 2021, the Land Court entered its *Judgment In Tax Lien Case* in which the Land Court in the Foreclosure Action.  The Land Court adjudged that Ms. Rodriguez's right of redemption of the Home was forever foreclosed and barred (the "Foreclosure Judgment").  *See* Exhibit E.

31.     Under applicable state law, when the Land Court entered the Foreclosure

Judgment, Tallage's title to the Home became absolute.

32.     Ms. Rodriguez's Tax Obligations were extinguished.  However, Ms. Rodriguez did not receive any other value through the tax foreclosure process.  She lost all equity in her Home.

33.     The Home was worth far more than Ms. Rodriguez's Tax Obligations.

34.     The Home was worth far more than the Purchase Amount that Tallage had paid.

35.     Upon information and belief, the value of the Home was at least $207,000 at the time of the Transfer.

36.     Under state law, the City must make a fair cash valuation of the Home for tax assessment purposes.  Under applicable state law, the fair cash valuation of the Home is its fair market value.

37.     In 2020, the City assessed the value of the Home at $189,000.  In 2021, the City assessed the value of the Home at $207,000.   In 2022, the City assessed the value of the Home at $250,100.   A true and accurate copy of the City's historical appraised values of the Home accessed on February 9, 2023 from the City's assessor's web portal is attached hereto as Exhibit F.

38.     Upon information and belief, Ms. Rodriguez's Home has a fair market value of no less than $300,000 today.

39.     Ms. Rodriguez has a declared homestead on her Home filed at the Worcester County Registry of Deeds Book 68702, Page 234. *See* Exhibit G.

40.     If the Home were a part of the bankruptcy estate, Ms. Rodriguez would be able to exempt it in full under 11 U.S.C. § 522 and Mass. Gen. L. c. 188, § 5.

41.     The Transfer was not a voluntary transfer of Ms. Rodriguez's interest in the

Home.

42.     Ms. Rodriguez did not conceal her interest in the Home.

43.     Ms. Rodriguez's only other assets are of either exempt or of *de minimis*

value.

44.     As of the Petition Date, there were no mortgages or other consensual liens

on or encumbering Ms. Rodriguez's Home.

45.     Ms. Rodriguez's Home is her principal asset and potential source of

retirement income.

46.     The Transfer was a transfer of all or substantially all of Ms. Rodriguez's

assets.

47.     At the time of the Transfer Ms. Rodriguez was made insolvent.

48.     The Transfer left Ms. Rodriguez with an unreasonably small capital.

49.     As of the Petition Date, one or more secured and unsecured creditors held

claims against Ms. Rodriguez whose and which claims arose before and after the

Transfer.

50.     On and at all times after the Petition Date Ms. Rodriguez was in and has

continued in possession of her Home.

51.     On or about October 17, 2022, Tallage commenced eviction proceedings to

evict Ms. Rodriguez from her Home (the "Eviction Proceedings").

52.     Thereafter, on or about November 8, 2022, a representative of Tallage,

Jaclyn Painchaud (the "Tallage Representative"), met with Ms. Rodriguez at her Home to

present her with an agreement prepared by Tallage under which Ms. Rodriguez would

move out of her Home on or before January 1, 2023, in exchange for a sum of money (the

"Moveout Agreement").

53.     The Tallage Representative met with Ms. Rodriguez alone.

54.     Ms. Rodriguez had not previously seen a copy of the Moveout Agreement, nor

had she been told about all its terms.

55.     The Tallage Representative had actively cultivated a relationship of trust

with Ms. Rodriguez over the period between late August 2022 and November 2022.

56.     Upon information and belief, the Tallage Representative is a Massachusetts

Notary Public.

57.     At the November 8 in person meeting, rather than allowing Ms. Rodriguez an

opportunity to review the Moveout Agreement, the Tallage Representative quickly

summarized some of its terms, namely Tallage's offer to pay Ms. Rodriguez $20,000 provided

that she vacate the Home by January 1, 2023.  Critically, the Tallage Representative did not

read or summarize the contents of paragraph 2 of the Moveout Agreement to Ms. Rodriguez,

which included a broad release of Tallage and of Worcester.

58.     At no time did the Tallage Representative invite Ms. Rodriguez to read the

Moveout Agreement, offer Ms. Rodriguez time to review it, or recommend that Ms.

Rodriguez consult with counsel before signing the Moveout Agreement.

59.     The Tallage Representative falsely told Ms. Rodriguez that (a) she had no

choice but to sign the Moveout Agreement or be thrown out of her Home before

Thanksgiving; (b) Tallage was affording her additional time to move out of her Home beyond

what would have been allowed in the Eviction Proceeding; and (c) all that the Moveout

Agreement required of her was that she move out of her Home by January 1, 2023 in

exchange for a payment of $20,000 from Tallage.  After the Tallage Representative briefly

summarized some parts of the Moveout Agreement, she instructed Ms. Rodriguez to write her

initials at the bottom of each page and to sign at the bottom of the document, which she did.

As of the meeting on November 8, Tallage had not yet signed the Moveout Agreement.

Moreover, the Eviction Proceedings had not yet progressed to the point of a trial.  The Trial

was scheduled for January 19, 2023.  A true and correct copy of the Moveout Agreement

signed by both parties is attached hereto as Exhibit H.  After Ms. Rodriguez signed the

Moveout Agreement, the Tallage Representative took out her Notary seal and notarized it.

The $20,000 has never been paid to Ms. Rodriguez.

### COUNT I
### Avoidance and Recovery of Fraudulent Transfer
### Pursuant to Bankruptcy Code §§ 522, 548 and 550

60.    Ms. Rodriguez repeats and re-alleges each of the allegations contained in

paragraphs 1 through 59 in their entirety as if fully set forth herein.

61.    The Transfer was a transfer of an interest of Ms. Rodriguez in the Home.

62.    The Land Court entered a judgment in the tax lien case foreclosing on her Home

on Aug. 10, 2021. *See* Exhibit E.

63.    The Transfer occurred within the two years of the Petition Date.

64.    Ms. Rodriguez received less than a reasonably equivalent value in exchange

for the Transfer.

65.    Ms. Rodriguez was made insolvent as a result of the Transfer.

66.    At the time of the Transfer, Ms. Rodriguez did not receive adequate

consideration for the value of the Home and any property remaining with Ms. Rodriguez

after the Transfer was unreasonably small.

67.    Upon information and belief, at the time of the Transfer, Tallage knew or

should have known that the Home was Ms. Rodriguez's principal asset.

68.    Upon information and belief, at the time of the Transfer Tallage knew or should have known that the Transfer was a transfer of all, or substantially all of Ms. Rodriguez's assets.

69.    At the time of the Transfer, Tallage knew that the fair value of the Home was substantially greater than the Tax Obligations.

70.    Upon information and belief, at the time of the Transfer Tallage knew that the Transfer would leave Ms. Rodriguez with an unreasonably small capital.

71.    As of the Petition Date, one or more unsecured creditors held claims against Ms. Rodriguez whose and which claims arose before and after the Transfer.

72.    At the time of the judgment in the tax lien case foreclosing on her Home on Aug. 10, 2021, a judgment lien had been placed on Ms. Rodriguez's Home. See judgment lien of Midland Funding LLC recorded at the Worcester County Registry of Deeds at Book 61988 Page 367. Town of Milford, No. D50336, 1999 WL 35819278, at *4 (Mass. Land Ct. July 14, 1999), aff'd sub nom. Town of Milford v. Boyd, 434 Mass. 754, 752 N.E.2d 732 (2001)

73.    Tallage did not take the Home in good faith.

74.    Ms. Rodriguez is entitled to avoid the Transfer as a fraudulent conveyance pursuant to Bankruptcy Code §§ 548(a)(1)(B) and 522(h).

75.    Ms. Rodriguez is entitled to recover the Home from Tallage for the benefit of Ms. Rodriguez and the estate pursuant to Bankruptcy Code § 550(a)(1).

76.    Ms. Rodriguez is entitled to exempt her interest in the Home pursuant to Bankruptcy Code § 522(g) and Mass. Gen. L. c. 188, § 5.

## COUNT II
### Avoidance and Recovery of Fraudulent Transfer Pursuant to
### Bankruptcy Code §§ 522, 544, 550 and Mass. Gen. L. c. 109A

77.     Ms. Rodriguez repeats and re-alleges each of the allegations contained in

paragraphs 1 through 76 in their entirety as if fully set forth herein.

78.     The Transfer was a transfer of an asset of Ms. Rodriguez.

79.     The Transfer occurred within four years before the Petition Date.

80.     Ms. Rodriguez received less than a reasonably equivalent value in exchange for

the Transfer.

81.     Ms. Rodriguez was rendered insolvent at the time of the Transfer.

82.     At the time of the Transfer Ms. Rodriguez did not receive adequate

consideration for the value of the Home and any property remaining with Ms. Rodriguez

after the Transfer was unreasonably small.

83.     The Transfer is avoidable under Mass. Gen. L. c. 109A, §§ 5(a)(2), 6(a) and

10.

84.     Pursuant to 11 U.S.C. §544(b), Ms. Rodriguez may avoid any transfer of an

interest of Ms. Rodriguez in property that is avoidable under G.L. c. 109A by a creditor

holding an unsecured claim against Ms. Rodriguez that is allowable under 11 U.S.C. §

502.

85.     There exist creditors of Ms. Rodriguez as of the Petition Date that hold

unsecured claims against Ms. Rodriguez which are allowable under 11 U.S.C. § 502.

86.     Upon information and belief, at the time of the Transfer Tallage knew or

should have known that the Home was Ms. Rodriguez's principal asset.

87.     Upon information and belief, at the time of the Transfer Tallage knew or

should have known that the Transfer was a transfer of all, or substantially all of Ms.

Rodriguez's assets.

88.    At the time of the Transfer Tallage knew or should have known that the fair

value of the Home was substantially greater than the Tax Obligations.

89.    Upon information and belief, at the time of the Transfer Tallage knew or

should have known that the Transfer would leave Ms. Rodriguez with an unreasonably

small capital.

90.    At the time of the judgment in the tax lien case foreclosing on her Home on

Aug. 10, 2021, a judgment lien had been placed on Ms. Rodriguez's Home. See judgment lien

of Midland Funding LLC recorded at the Worcester County Registry of Deeds at Book 61988

Page 367. Town of Milford, No. D50336, 1999 WL 35819278, at *4 (Mass. Land Ct. July 14, 1999),

aff'd sub nom. Town of Milford v. Boyd, 434 Mass. 754, 752 N.E.2d 732 (2001).

91.    As of the Petition Date, one or more unsecured creditors held claims against

Ms. Rodriguez and these claims arose before and after the Transfer.

92.    Tallage did not take Ms. Rodriguez's Home in good faith.

93.    Ms. Rodriguez is entitled to avoid the Transfer of her Home as a fraudulent

conveyance pursuant to Bankruptcy Code §§ 544 and 522(h), and Mass. Gen. L. c. 109A,

§§ 5(a)(2) and 6(a).

94.    Ms. Rodriguez is entitled to recover her Home from Tallage for her own

benefit and the benefit of her estate pursuant to Bankruptcy Code §550(a)(1).

95.    Ms. Rodriguez is entitled to exempt her interest in the Home pursuant to

Bankruptcy Code § 522(g) and Mass. Gen. L. c. 188, § 5.

### COUNT III
### Preliminary Injunction Enjoining
### <u>Transfer or Encumbrance of the Home</u>

96.    Ms. Rodriguez repeats and re-alleges each of the allegations contained in

paragraphs 1 through 95 in their entirety as if fully set forth herein.

97.    It is Ms. Rodriguez's intention in this case to propose a plan of reorganization

in which her Home is recovered and under which the claims of creditors, including the

Tallage, will receive treatment under that plan in conformity with the requirements of the

Bankruptcy Code.

98.    At the time of the auction of the tax title for Ms. Rodriguez's Home to

Tallage, the Tax Obligations were only $2,657.00, for which Tallage purchased the tax

title to Ms. Rodriguez's Home and the right to file a tax foreclosure action in Land Court.

*See* Exhibit C.

99.    The value of the Home was at all relevant times substantially greater than

the amount of the Tax Obligations.

100.    Tallage filed an action in Land Court to foreclose on Ms. Rodriguez's Home on

December 16, 2019.

101.    Tallage filed a motion to default Ms. Rodriguez on October 19, 2020 and the

motion was allowed and a final judgment was entered on Aug. 10, 2021.

102.    August 10, 2021 was the effective date of the Transfer of Ms. Rodriguez's Home

to Tallage.

103.    Twelve months after the judgement entered, on Aug. 10, 2022 the judgment

could not be vacated and became absolute pursuant to Massachusetts law.  See <u>Town of

Andover v. State Fin. Servs., Inc.</u>, 432 Mass. 571, 577, 736 N.E.2d 837, 841 (2000).

104.    Ms. Rodriguez's Home was her principal asset.

105.    The Transfer was a transfer of all, or substantially all of Ms. Rodriguez's assets.

106.    The Transfer left Ms. Rodriguez with an unreasonably small capital or assets.

107.    The Transfer occurred within four years before the Petition Date.

108.    As of the Petition Date, one or more unsecured creditors held claims against Ms. Rodriguez whose and which claims arose before and after the Transfer.

109.    There is a substantial likelihood that Ms. Rodriguez will succeed on the merits of her fraudulent conveyance claims against Tallage.

110.    The Transfer was made on account of Ms. Rodriguez's antecedent debt of Ms. Rodriguez to the City.

111.    Ms. Rodriguez was made insolvent as a result of the Transfer.

112.    Pursuant to applicable state law, Tallage is the absolute owner of Ms. Rodriguez's Home, subject only to her claims to avoid the Transfer and recover her Home for the benefit of the estate.

113.    Ms. Rodriguez still resides in her Home and has never lived anywhere else since she bought her Home in 1996.

114.    There is a significant risk that if the injunction requested is withheld that Tallage may or will sell, assign, convey, or otherwise transfer or encumber Ms. Rodriguez's Home, either of which events would cause irreparable harm to Ms. Rodriguez and to the estate.

115.    Given Ms. Rodriguez's unique interest in her Home, on balance with the Tallege's commercial interest in collecting the Tax Obligations, together with the

interests of other creditors whose hope of any claim treatment evaporates entirely if the

Home is lost, the balance of harms weighs heavily in favor of granting the injunction

requested to protect Ms. Rodriguez's interest in avoiding the Transfer and recovering her

Home for the benefit of the estate.

116.   The law and public policy abhor a forfeiture of interests in property but

favor the payment of municipal property Tax Obligations.

117.   Granting Ms. Rodriguez, the injunction requested to protect her interest in

recovering her Home so she can propose and confirm a plan is in harmony with the public

interest because it will avoid a forfeiture of substantial equity and provide for treatment of

the Tax Obligations and the claims of other creditors under a plan of reorganization in

accordance with the Bankruptcy Code.

118.   Ms. Rodriguez is entitled to an injunction enjoining Tallage from selling,

assigning, conveying, or otherwise transferring or encumbering her Home pending the

outcome of this adversary proceeding.

**COUNT IV**
**Avoidance and Recovery of Fraudulent Transfer**
**Pursuant to Bankruptcy Code §§ 522, 548 and 550**

119.   Ms. Rodriguez repeats and re-alleges each of the allegations contained in

paragraphs 1 through 118 in their entirety as if fully set forth herein.

120.   Prior to signing the Moveout Agreement, Ms. Rodriguez had certain claims

or causes of action against Tallage and the City of Worcester including, without

limitation, claims to ownership and possession of the Home, state and federal

constitutional claims against the City of Worcester, as well as defenses to the claims or

causes action asserted by Tallage and the City of Worcester against her (the "Rodriguez

Claims").  Under applicable law, the Rodriguez Claims constitute an interest in property.

121.   The Moveout Agreement, particularly paragraph 2 thereof, was a transfer of an interest in property of Ms. Rodriguez.

122.   The transfer of the Rodriguez Claims pursuant to the Moveout Agreement occurred within the two years of the Petition Date.

123.   Ms. Rodriguez received less than a reasonably equivalent value in exchange for the transfer of the Rodriguez Claims pursuant to the Moveout Agreement.

124.   Ms. Rodriguez was made insolvent as a result of the transfer of the Rodriguez Claims pursuant to the Moveout Agreement.

125.   At the time of the transfer of the Rodriguez Claims pursuant to the Moveout Agreement, Ms. Rodriguez did not receive adequate consideration and any property interest remaining with Ms. Rodriguez thereafter was unreasonably small.

126.   Upon information and belief, at the time of the Transfer, Tallage knew or should have the Rodriguez Claims were a principal asset of Ms. Rodriguez.

127.   Upon information and belief, at the time of the transfer of the Rodriguez Claims, Tallage knew or should have known that the transfer was a transfer of all, or substantially all, of Ms. Rodriguez's assets.

128.   At the time of the transfer pursuant to the Moveout Agreement, Tallage knew that the fair value of the Rodriguez Claims was substantially greater than value of the consideration Tallage agreed to provide Ms. Rodriguez under the Moveout Agreement.

129.   Tallage has never paid Ms. Rodriguez the consideration specified in the Moveout Agreement.

130.   Upon information and belief, at the time of the transfer of the Rodriguez Claims

pursuant to the Moveout Agreement, Tallage knew that the transfer would leave Ms. Rodriguez with unreasonably small capital.

131.   As of the Petition Date, one or more unsecured creditors held claims against Ms. Rodriguez whose and which claims arose before and after the  transfer of the Rodriguez Claims pursuant to the Moveout Agreement.

132.   Tallage did not take the transfer of the Rodriguez Claims pursuant to the Moveout Agreement in good  faith.

133.   Ms. Rodriguez is entitled to avoid the transfer of the Rodriguez Claims and the Moveout Agreement as a fraudulent conveyance pursuant to Bankruptcy Code §§ 548(a)(1)(B) and 522(h).

134.   Ms. Rodriguez is entitled to recover the Rodriguez Claims from Tallage for the benefit of Ms. Rodriguez and the estate pursuant to Bankruptcy Code § 550(a)(1).

135.   Ms. Rodriguez is entitled to exempt her interest in the Rodriguez Claims pursuant to Bankruptcy Code § 522(g) and Mass. Gen. L. c. 188, § 5.

## COUNT V
### Avoidance and Recovery of Fraudulent Transfer Pursuant to
### Bankruptcy Code §§ 522, 544, 550 and Mass. Gen. L. c. 109A

136.   Ms. Rodriguez repeats and re-alleges each of the allegations contained in paragraphs 1 through 135 in their entirety as if fully set forth herein.

137.   The transfer of the Rodriguez Claims and the Moveout Agreement were transfers of assets of Ms. Rodriguez.

138.   The transfer occurred within four years before the Petition  Date.

139.   Ms. Rodriguez received less than a reasonably equivalent value in exchange for the transfer.

140.   Ms. Rodriguez was rendered insolvent at the time of the transfer.

141.   At the time of the transfer Ms. Rodriguez did not receive adequate consideration for the value and any property remaining with Ms. Rodriguez after the transfer was unreasonably small.

142.   The transfer is avoidable under Mass. Gen. L. c. 109A, §§ 5(a)(2), 6(a) and 10.

143.   Pursuant to 11 U.S.C. §544(b), Ms. Rodriguez may avoid any transfer of an interest of Ms. Rodriguez in property that is avoidable under G.L. c. 109A by a creditor holding an unsecured claim against Ms. Rodriguez that is allowable under 11 U.S.C. § 502.

144.   There exist creditors of Ms. Rodriguez as of the Petition Date that hold unsecured claims against Ms. Rodriguez which are allowable under 11 U.S.C. § 502.

145.   Upon information and belief, at the time of the transfer, Tallage knew or should have known that Rodriguez Claims were a principal  asset of Ms. Rodriguez.

146.   Upon information and belief, at the time of the transfer Tallage knew or should have known that the transfer was a transfer of all, or substantially all of Ms. Rodriguez's assets.

147.   At the time of the transfer Tallage knew or should have known that the fair value of the Rodriguez Claims was substantially greater than the consideration Tallage agreed to transfer to Ms. Rodriguez under the Moveout Agreement.

148.   Upon information and belief, at the time of the transfer Tallage knew or should have known that the transfer would leave Ms. Rodriguez with an unreasonably small capital.

17

149.   As of the Petition Date, one or more unsecured creditors held claims against Ms. Rodriguez and these claims arose before and after the transfer under the Moveout Agreement.

150.   Tallage did not take the Rodriguez Claims or enter into the Moveout Agreement in good faith.

151.   Ms. Rodriguez is entitled to avoid the transfer of property under the Moveout Agreement as a fraudulent conveyance pursuant to Bankruptcy Code §§ 544 and 522(h), and Mass. Gen. L. c. 109A, §§ 5(a)(2) and 6(a).

152.   Ms. Rodriguez is entitled to recover interest in the Rodriguez Claims for her own benefit and the benefit of her estate pursuant to Bankruptcy Code §550(a)(1).

153.   Ms. Rodriguez is entitled to exempt her interest in the in the Rodriguez Claims pursuant to Bankruptcy Code § 522(g) and Mass. Gen. L. c. 188, § 5.

### COUNT VI
### Avoidance and Recovery of Preferential Transfer Pursuant to
### Bankruptcy Code §§ 547(b) and 550

154.   Ms. Rodriguez repeats and re-alleges each of the allegations contained in paragraphs 1 through 153 in their entirety as if fully set forth herein.

155.   Pursuant to the Moveout Agreement, on or within ninety (90) days immediately prior to the Petition Date (the "Preference Period"), Ms. Rodriguez transferred or released her interest in the Rodriguez Claims to or for the benefit of Tallage.

156.   The transfer or release of the Rodriguez Claims constituted a transfer of Ms. Rodriguez interest in property.

157.   The transfer or release of the Rodriguez Claims were made on account of indebtedness owed by Ms. Rodriguez to Tallage before the transfer was made.

158.    The transfer or release of the Rodriguez Claims were made while Ms. Rodriguez was insolvent.  Pursuant to 11 U.S.C. § 547(f), Ms. Rodriguez is presumed to have been insolvent on and during the ninety (90) days immediately preceding the Petition Date.

159.    The transfer or release of the Rodriguez Claims enabled Tallage to receive more than it would have received if: (i) her Chapter 13 case was a case under Chapter 7 of the Bankruptcy Code; (ii) the transfer had not been made; and (iii) Tallage received payment on any indebtedness of Ms. Rodriguez provided by the provisions of the Bankruptcy Code.  As evidenced by Ms. Rodriguez's schedules filed in her Chapter 13 case, her liabilities exceed her assets to the point that unsecured creditors will not receive full payment on their claims.

160.    Tallage was the initial transferee of the transfer of the Rodriguez Claims or the entity for whose benefit the transfer was made.

161.    Accordingly, the Court should enter an order against Tallage: (i) avoiding the transfer or release of the Rodriguez Claims and the Moveout Agreement under section 547(b) of the Bankruptcy Code; and (ii) entitling Ms. Rodriguez to recover the transfer or releases or the value of the transfers or releases from Tallage under section 550(a) of the Bankruptcy Code, together with the award of pre and post-judgment interest thereon from the date of demand to the date of payment or other satisfaction of such order and judgment.

**CLAIM OBJECTION**

162.    Pursuant to Bankruptcy Rule of Procedure 3007(b), "A party in interest shall not include a demand for relief of a kind specified in Rule 7001 in an objection to the allowance of a claim, but may include the objection in an adversary proceeding."

163.    Debtor hereby objects to Tallage's claim, Claim 4, via this adversary proceeding.

164.   Debtor has chosen to object to Claim 4 as a part of her adversary proceeding because, as Tallage points out in its statement concerning its conditional proof of claim, the status of Tallage's claim is bound up in the outcome of the adversary proceeding.

165.   As required by MLBR 3007-1(a), Ms. Rodriguez states the factual and legal grounds for her objection below, as well as her recommendation to the Court as to whether Claim 10 should be disallowed or allowed in an amount or with a priority other than as filed. *See* MLBR 3007-1(a).

166.   Ms. Rodriguez recommends that the Court allow Tallage's claim in part. Specifically, that it allow Tallage a secured claim of $3,370.60 plus interest on this amount, as well as any costs that can be provably traced to collecting this specific amount.

167.   A secured claim of $3,370.60 is proper because—pursuant to M.G.L. c. 60 §§ 43 and 45— Tallage is entitled to "security for the payment of the purchase price" it paid for Ms. Rodriguez's home at auction. Tallage states in Attachment 7 to its Amended Proof of Claim that the "Principal paid at Auction" for Ms. Rodriguez's home was $3,370.60. This amount matches the amount on the deed Tallage includes as Attachment 1 to its proof of claim.

168.   Tallage is also entitled to have its secured claim include "intervening costs…and charges" attributable to this principal amount. M.G.L. c. 60 § 45.

169.   Tallage's inclusion of the taxes that it paid subsequent to the sale of Ms. Rodriguez's home, however, are not properly part of its Amended Proof of Claim. This is because the treatment of taxes that become due subsequent to a sale or taking, as well as their associated costs and interest, are governed by M.G.L. c. 60 §§ 60 and 61. These statutory sections provide no support for the idea that Tallage has a lien for subsequent taxes, interest on subsequent taxes, or costs related to the collection of subsequent taxes.

170.   Tallage points to attachments 3 through 6 of its proof of claim to support the idea that its secured claim properly includes subsequent taxes. These attachments are certificates issued under M.G.L. c. 60 § 60. But M.G.L. c. 60 § 60 certificates are, the mechanism for creating a lien for taxes that are paid by a third party "*before* a taking or sale." (emphasis added), not after. Section 60 is not a mechanism to collect taxes that accrue subsequent to a taking or sale.

171.   For the collection of taxes that accrue subsequent to a taking or sale, the governing section M.G.L. c. 60 § 61. This section, titled "[t]axes subsequent to a taking or sale" gives towns different rights from their assignees. Towns are able to collect subsequent taxes as they come due and get a continuing lien as security for their payment. *Id.* Assignees, in contrast, get no rights whatsoever to collect subsequent taxes. *Id.*

172.   Per the statutory text of M.G.L. c. 60 § 61,  "[a] city or town which has assigned a tax title held by it shall, after such assignment, have all the rights and powers to take or sell the real estate affected thereby, for the nonpayment of taxes, which it would have possessed, had said city or town never been the holder of said tax title." *Id.* In other words, the town—not the assignee—retains the right to subsequent taxes after a sale. To collect these taxes, the city of town must commence a new sale or taking.

173.   Ms. Rodriguez also object to Tallage's claim because she did not receive any of the various notices required by statute prior to the sale of her home.

174. Ms. Rodriguez also objects to Tallage's claim on the grounds that M.G.L. c. 60 is unconstitutional, and therefore Tallage has no right to any claims arising from that statute.

**<u>REQUESTS FOR RELIEF</u>**

WHEREFORE, Ms. Rodriguez requests the following relief against Tallage:

A.      A judgment on Count I of the Amended Complaint, avoiding the Transfer pursuant to Bankruptcy Code §§ 522(h), 548(a)(l)(B) and recovering and/or exempting the Home to Ms. Rodriguez for the benefit of Ms. Rodriguez and the estate pursuant to Bankruptcy Code §§ 522(g), 550(a)(1);

B       A judgment on Count II of the Amended Complaint, avoiding the Transfer pursuant to Bankruptcy Code §§ 522(h), 544 and Mass. Gen. L. c. 109A and recovering and/or exempting the Home to Ms. Rodriguez for the benefit of Ms. Rodriguez and the estate pursuant to Bankruptcy Code §§ 522(g) and 550(a)(1); and

C.      An order on Count III of the Complaint, in the form of a preliminary injunction prohibiting Tallage, and any of its agents, servants, employees, attorneys, and any person acting at the direction of on in concert with Tallage from selling, assigning, conveying, or otherwise transferring or encumbering the Home pending the outcome of this adversary proceeding;

D.      A judgment on Count IV of the Amended Complaint, avoiding the transfer or release of the Rodriguez Claims and the Moveout Agreement pursuant to Bankruptcy Code §§ 522(h), 548(a)(l)(B) and recovering and/or exempting the Rodriguez Claims to Ms. Rodriguez for the benefit of Ms. Rodriguez and the estate pursuant to Bankruptcy Code §§ 522(g), 550(a)(1);

E.      A judgment on Count V of the Amended Complaint, avoiding the transfer or release of the Rodriguez Claims and the Moveout Agreement pursuant to Bankruptcy Code §§

522(h), 544 and Mass. Gen. L. c. 109A and recovering and/or exempting the Rodriguez

Claims to Ms. Rodriguez for the benefit of Ms. Rodriguez and the estate pursuant to

Bankruptcy Code §§ 522(g) and 550(a)(1); and

      F.     A judgment on Count VI:  (i) avoiding the transfer or release of the Rodriguez

Claims and the Moveout Agreement under section 547(b) of the Bankruptcy Code; and (ii)

entitling Ms. Rodriguez to recover the transfer or releases or the value of the transfers or

releases from Tallage under section 550(a) of the Bankruptcy Code, together with the award

of pre and post-judgment interest thereon from the date of demand to the date of payment or

other satisfaction of such order and judgment; and

      G. An order sustaining Ms. Rodriguez's objection to Tallage's claim; and

      H. Granting to Ms. Rodriguez such other and further relief as this Court deems

proper and just.

<div style="margin-left:50%">

Respectfully submitted
Carmen N. Rodriguez,
By her attorney:

/s/Todd S. Kaplan
Todd S. Kaplan, BBO #630710
Matt Brooks, BBO #693322
Greater Boston Legal Services
197 Friend Street
Boston, MA 02114
(617) 603-1647
tkaplan@gbls.com
mbrooks@gbls.com

/s/ Julia Frost-Davies
Julia Frost-Davies, BBO #630590
Morgan, Lewis & Bockius LLP
One Federal Street
Boston, MA 02110-1726
(617) 951-8422
julia.frost-davies@morganlewis.com

</div>

/s/ T. Charlie Liu
T. Charlie Liu, BBO #693338
Morgan, Lewis & Bockius LLP
101 Park Avenue
New York, NY 10178-0060
(212) 309-6133
charlie.liu@morganlewis.com

/s/ John C. La Liberte
John C. La Liberte, BBO #556046
PioneerLegal, LLC
185 Devonshire Street
Boston, MA 02110
(617) 723-2277
john.laliberte@pioneerlegal.org

Dated: March 14, 2023

VERIFICATION

I, Carmen N. Rodriguez, declare under penalty of perjury under the laws of the United

States of America that the allegations in paragraphs 1-174 of the foregoing Complaint are

true and accurate, to the best of my knowledge and belief, and, if not based on my own

personal knowledge are matters of public record, that I believe such allegations to be true

and correct and no material facts have been omitted therefrom.

/s/ Carmen N. Rodriguez
Carmen N. Rodriguez

Dated: 3/14/2023